UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-22881-CIV-KMW

ESTEBAN PEDRO SAMBOLA HODGSON,

    Plaintiff,

vs.

SEVEN SEAS CRUISES, *et. al.*

    Defendants.
_____/

## ORDER

**THIS MATTER** is before the Court on Defendants' motion to dismiss and compel arbitration (DE 3) and Plaintiff's motion to remand (DE 8). Both motions have been fully briefed and are now ripe for consideration (DE 4, 7, 11, 16; 12, 13). For the reasons discussed below, Defendants' motion to dismiss is **DENIED**, and Plaintiff's motion to remand is **GRANTED IN PART**.

    **I.**    **BACKGROUND**

        **A. Procedural History**

This action arises out of the injuries Plaintiff Esteban Pedro Sambola Hodgson ("Hodgson"), a citizen of Nicaragua, allegedly sustained from slipping down the stairs while employed as a crewmember on a vessel owned by Defendant Voyager Vessel Company ("Voyager") and operated by Defendant Seven Seas Cruises ("Regent"). Plaintiff claims that the fall caused injuries to his left leg and foot. (DE 1-1.) At the time of the incident, Plaintiff was subject to an employment agreement with a staffing company, Seven Seas Services Limited ("SSS"), which assigned Plaintiff to work on Defendants' vessel. *Id.* Plaintiff claims that upon his assignment, Regent became his "borrowing

1

employer," and owed him a duty "to provide a seaworthy vessel," a "safe place to work," and "adequate medical care." *Id.* On March 30, 2019, Hodgson initiated this suit in state court, asserting claims under the Jones Act and general maritime law. *Id.*

On July 12, 2019, Defendants removed the case to federal court pursuant to Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201 to 208 (the "Convention Act" or "Chapter 2"). (DE 1.) After removal, Defendants filed a motion to dismiss and to compel arbitration, asserting that Plaintiff's claims are subject to mandatory arbitration provisions. (DE 3.) On August 12, 2019, Plaintiff moved to remand the case to state court, contending that his claims do not "relate" to a valid "arbitration agreement" governed by the Convention Act, and thus, the Court lacks subject matter jurisdiction under Section 205 to consider Defendants' motion. (DE 8.)

### B. The "Crew Agreement" and "Collective Bargaining Agreement"

The notice of removal references two agreements that contain arbitration provisions. The first is the employment contract Plaintiff signed with SSS ("Crew Agreement"). The Crew Agreement incorporates a collective bargaining agreement between SSS, Regent, and a labor union ("CBA"), which it references throughout. For instance, a section of the Crew Agreement titled "Collective Bargaining Agreement" provides:

> a. The standard terms and conditions noted in the [CBA] shall only apply while the Seafarer is in the service of an assigned Vessel.
>
> b. The current [CBA] is incorporated by reference into this [Crew] Agreement.
>
> c. A copy of the current [CBA] is kept with the HR Coordinator aboard each Vessel and with the Seafarer's Recruitment and Placement Service…and was made

> available to the Seafarer to review prior to executing this contract and thereafter for review upon the Seafarer [sic] request.

(DE 1-2 at 1.) Moreover, the "Forum for Disputes" section of the Crew Agreement states, "[a]ny and all disputes arising out of or in connection with this [Crew] Agreement…shall be handled in accordance with the CBA." (*Id.* at 4.) This section further provides that "[i]f a matter is not resolved after conference, either party may refer it to an arbitrator for final resolution." *Id.* Finally, the paragraph above the signature block states:

> I am signing my name below to show I read, understand and agree with everything said in this Agreement and I further acknowledge having had the opportunity to read the Collective Bargaining Agreement that is incorporated by reference to this Agreement. I adopted this Agreement as my own prior to executing this Agreement. Employee agrees that Employee was given the opportunity to review and seek advice on this agreement prior to signing.

*Id.*

The second contract referenced in the removal notice is the CBA. Article 26 of the CBA, titled "Grievance and Disputes," states that "[a]ny and all disputes, claims or controversies whatsoever, which cannot be resolved onboard or between the parties shall be referred to arbitration as elsewhere provided for herein." (DE 1-3 at 12.) It further provides that "claims and lawsuits may not be brought by any seafarer or party hereto except to enforce arbitration or a decision of the arbitrator or to complain of the decision of the arbitrator." *Id.*

## II. LEGAL STANDARD

### A. The Convention Act

Defendants seek to compel arbitration under to the Convention Act, an amendment to the FAA that was enacted to implement a treaty governing arbitration agreements

3

entered into by foreign entities or individuals (the "New York Convention" or "Convention Treaty").[1]  Under Section 205 of the Convention Act, federal courts have subject matter jurisdiction over any "action falling under the Convention."  *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323 (11th Cir. 2018) ("*Outokumpu*").  Section 206 empowers federal courts with subject matter jurisdiction under the Convention Act to compel parties to arbitrate their claims.  The Eleventh Circuit has explained that under the Convention Act, a "district court must order arbitration" when four conditions are met:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005).  Under the Convention Treaty, the "agreement in writing" includes "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1291 (11th Cir. 2004).

### B.   Bifurcated Analysis under *Outokumpu*

In *Outokumpu*, the Eleventh Circuit articulated the legal framework that governs the Court's analysis of the Parties' motions.  The Eleventh Circuit explained that "[w]here jurisdiction is challenged on a motion to remand, the district court shall first perform a limited inquiry on the face of the pleadings and the removal notice to determine whether the suit 'relates to' an arbitration agreement falling under the Convention under the factors

---

[1] United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.

4

articulated in *Bautista*." *Outokumpu*, 902 F.3d at 1320 (11th Cir. 2018) (citing Section 205 of the Convention Act). The court articulated a "two-step inquiry" for analyzing jurisdiction under Section 205:

> First, the district court should determine whether the notice of removal describes an arbitration agreement that may "fall under the Convention." To do so, the district court employs the test articulated in *Bautista* to the four corners of the arbitration agreement and asks whether the removing party has articulated a non-frivolous basis [that the four *Bautista* factors are satisfied]. Second, the district court must determine whether there is a non-frivolous basis to conclude that agreement sufficiently "relates to" the case before the court such that the agreement to arbitrate could conceivably affect the outcome of the case.

*Id.* at 1324. (internal brackets and citation omitted).

The court explained that for purposes of determining jurisdiction, the "relates to" requirement should be construed liberally. Thus, the arbitration agreement identified in the removal notice "need only be sufficiently related to the dispute such that it conceivably affects the outcome of the case." *Id.* at 1323. The court explained that "as long as the argument that the case 'relates to' the arbitration agreement is not immaterial, frivolous, or made solely to obtain jurisdiction, the relatedness requirement is met for purposes of federal subject matter jurisdiction." *Id.* at 1323-1324.

If the two-step jurisdictional inquiry is satisfied, a court with proper jurisdiction under Section 205 may consider compelling arbitration. But in deciding whether the non-moving party should be compelled to arbitrate his or her claims, *Outokumpu* instructs district courts to engage in a "more rigorous" assessment of the *Bautista* factors. *Id.* at 1325. The court further explained that the first *Bautista* factor—whether "there is an agreement in writing within the meaning of the Convention"—requires "that the arbitration

agreement be signed by the parties before the Court or their privities" and that "[p]rivate parties…cannot contract around the Convention's requirement that the parties *actually sign* an agreement to arbitrate their disputes in order to compel arbitration." *Id.* at 1326 (emphasis in original).

### III.  DISCUSSION

#### A.  Subject Matter Jurisdiction under Section 205

In applying the two-part inquiry in *Outokumpu* for assessing jurisdiction, the Court finds that it possesses subject matter jurisdiction to consider Defendants' motion.[2] The first part of the inquiry requires the court to "determine whether the notice of removal describes an arbitration agreement that may fall under the convention." *Id.* at 1324. For this step, the Court's analysis is limited to whether the "removing party has articulated a non-frivolous basis" that the *Bautista* factors are satisfied upon a review of the pleadings and removal notice. *Id.* In the removal notice, Defendants have identified the Crew Agreement and CBA as containing "mandatory arbitration agreements" that require arbitration of Plaintiff's claims. Plaintiff challenges these agreements only as to the first *Bautista* factor, contending that neither contracts contain an arbitration clause that has been signed by *all* Parties to this litigation.

---

[2] Defendants argue that the Court should leave all issues concerning this case, including the initial determination of arbitrability, to an arbitrator. Their reliance on *Jones v. Waffle House, Inc.* is misplaced. 866 F.3d 1257 (11th Cir. 2017). The agreement at issue in *Jones* included a delegation provision that explicitly stated, "The Arbitrator, and not any federal, state, or local court or agency, shall have the authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement…." 866 F.3d at 1263. The court reasoned that this provision conveyed a clear intent by the parties to have all matters handled by an arbitrator. *Id.* at 1267, 1271. There is no similar delegation provision in the agreements presented by Defendants. Accordingly, the Court turns to the bifurcated analysis of *Outokumpu*.

6

In light of *Outokumpu*, the Court finds Plaintiff's argument to be unavailing. The notice of removal in *Outokumpu* identified a contract that the party seeking remand (Outokumpu) had signed with a non-party (Fives), to which the removing party (GE Energy) was not a signatory. The Eleventh Circuit rejected Outokumpu's challenge to the "agreement in writing" requirement, which it had advanced as a basis for remanding the case, explaining, "GE Energy has identified the arbitration clauses in the Outokumpu-Fives Contracts. Because the Contracts are signed by Outokumpu and Fives, the Contracts satisfy the first factor." *Outokumpu*, 902 F.3d at 1324. In doing so, *Outokumpu* instructs that a removing party establishes a "non-frivolous basis" for the first *Bautista* factor if the agreement was signed by *a* party to the litigation, and that the signature of *all* parties to a case is not required.

Here, a "non-frivolous basis" exists for finding that the Crew Agreement and the CBA satisfy the "agreement in writing" requirement. According to the removal notice, Defendant Regent is a signatory to the CBA, while Plaintiff is a signatory to the Crew Agreement[3], and both agreements contain an arbitration clause. And while these agreements may ultimately prove insufficient to compel Plaintiff to arbitrate his claims,

---

[3] Plaintiff denies his signature appears on the Crew Agreement. Plaintiff also claims that there is no "Seafarer" named in the Crew Agreement. However, the first clause (1.a.) of the Crew Agreement refers to the "Seafarer named above," and the Plaintiff's detailed personal information appears directly above this reference. (DE 1-2 at 1.) Moreover, Plaintiff's name is handwritten on the signature line and handwritten letters of his initials are on the bottom of every page. (DE 1-2.) And although Plaintiff relies on the actual contents of the Crew Agreement, for the jurisdictional analysis, the Court need not examine the agreement itself, and may confine itself to the "face of the pleadings and the removal notice." *Outokumpu*, 902 F.3d at 1324. The removal notice states that Plaintiff "executed" the Crew Agreement. (DE1 at ¶ 3.)

7

"they are sufficient to meet [the removing party's] burden opposing remand." *Id.* at 1324. Accordingly, the Court finds part one of the jurisdiction inquiry to be satisfied.

In applying the second step of the jurisdictional inquiry, the Court finds that there is a "non-frivolous basis" to conclude that the arbitration provisions in the Crew Agreement and CBA "relate to" Plaintiff's claims. *Id.* Upon a review of the "face of the pleadings and removal notice," Defendants' arguments for why Plaintiff's claims are arbitrable do not strike the Court as "immaterial, frivolous, or made solely to obtain jurisdiction." *Id.* at 1323-1324. Indeed, cases in other jurisdictions presenting strikingly similar facts have found Defendants' arguments to be meritorious. *See*, *e.g.*, *Pagaduan v. Carnival Corp.*, 709 F. App'x 713 (2d Cir. 2017); *Lucina v. Carnival PLC*, 2019 WL 1317471, at *5 (E.D.N.Y. Mar. 22, 2019).[4] And while Defendants' arguments may ultimately be lacking in merit under the law of this Circuit, *Otukumpu* makes clear that "in determining jurisdiction the district court need not—and should not—examine whether the arbitration agreement binds the parties before it." *Outokumpu,* 902 F.3d. at 1324. Accordingly, Plaintiff's motion is denied to the extent that it asserts that the Court lacks subject matter jurisdiction to consider the arbitrability of Plaintiff's claims.

### B.     Defendants' Motion to Compel Arbitration

The next step in the bifurcated analysis is determining whether Hodgson may be compelled to arbitrate his claims under Section 206. For motions to compel arbitration,

---

[4] These cases also demonstrate that there is an "objectively reasonable basis" for Defendants' removal under the Convention Act. Accordingly, Plaintiff's motion is denied as to its request for attorney's fees and costs. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under [the removal statute 28 U.S.C. § 1447] only where the removing party lacked an objectively reasonable basis for seeking removal.").

the Eleventh Circuit has instructed that courts must engage in a "more rigorous" application of the *Bautista* factors than during the jurisdictional analysis. *Outokumpu*, 902 F.3d at 1320. Here, as in *Outokumpu*, the Court finds that the "inquiry starts and ends with the first factor," because "there is no agreement in writing within the meaning of the Convention." *Id.* Article II of the Convention Treaty provides:

> [E]ach Contracting State shall recognize an <u>agreement in writing</u> under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

(emphasis added.) It further states that "the term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Outokumpu* expounded on the Convention Treaty's "agreement in writing" requirement, explaining that Article II "require[s] that the parties sign an agreement to arbitrate the dispute between them." *Outokumpu*, 902 F.3d at 1326. In other words, an arbitration agreement that has been signed by the parties to the litigation must exist.

In *Outokumpu*, buyer (Outokumpu) and non-party seller (Fives) entered into a sales contract for steel mill equipment, which Fives subcontracted with GE Energy to supply. When the equipment began to fail, Outokumpu sued GE Energy in state court. GE Energy removed the case to federal court under the Convention Act, and moved to compel arbitration pursuant to the contract's arbitration provision. The Eleventh Circuit held that GE Energy could not compel Outokumpu to arbitrate its claims because the arbitration provision did not satisfy the Convention Treaty's "agreement in writing" requirement. Even though the contract defined the terms "Buyer" and "Seller" as "Parties"

9

to the agreement, and also expressly included seller's subcontractors within the definition of "Seller," the court concluded that the "agreement in writing" requirement was not met because "GE Energy is undeniably not a signatory to the Contracts." *Id.*

Here, it is undisputed that the Crew Agreement and the CBA do not contain arbitration provisions that have been signed by *all* Parties to this lawsuit. The CBA was signed by Regent and non-parties SSS and a labor union, but not by Plaintiff or Voyager. Similarly, the Crew Agreement was signed by Hodgson and non-party SSS, but not Defendants. Nonetheless, Defendants argue that because the Crew Agreement expressly incorporated the CBA, Defendant Regent is "a signatory [] by incorporation." The Court is not persuaded. The Eleventh Circuit has made clear that parties "cannot contract around the Convention's requirement that the parties *actually sign* an agreement to arbitrate their disputes in order to compel arbitration." *Outokumpu*, 902 F.3d at 1326 (emphasis in original). Thus, satisfying the "agreement in writing" requirement here would require all parties to have "actually signed" the Crew Agreement or the CBA. Because no valid "agreement in writing" exists between the Parties, there is no basis under the Convention Act for this Court to compel arbitration of Plaintiff's claims.

The Court also finds Defendants' alternative in support of arbitration similarly unavailing. Defendants' "incorporation by reference" argument relies on cases where, unlike the facts before this Court, the disputing parties were all signatories to an underlying agreement. *See Bautista*, 396 F.3d at 1293 (describing agreement signed by plaintiff and defendant that incorporated arbitration provisions); *Doe*, 657 F.3d at 1214-15 (11th Cir. 2011) (same). Similarly, *Outokumpu* makes clear that Defendants' equitable estoppel and any third-party beneficiary arguments are not available under the

10

Convention Act if the "agreement in writing" requirement is not satisfied. *Outokumpu*, 902 F.3d at 1326-27.

### C. Remand to State Court

Here, the only basis Defendants have identified for federal jurisdiction in their notice of removal is Section 205 of the Convention Act. Because the Court finds compelling arbitration of Plaintiff's claims to be inappropriate under the Convention Act—and Defendants have specified no other basis for the Court to retain jurisdiction in their removal notice—the Court grants Plaintiff's motion to remand and orders the case to proceed in state court. *See Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324 (11th Cir. 2015) (noting a court's "continuing obligation to examine jurisdiction"); *Pineda v. Oceania Cruises, Inc.*, 283 F.Supp.3d 1307, 1313 (S.D. Fla. 2017) (remanding case to state court under strikingly similar facts); *Outokumpu Stainless USA, LLC v. GE Energy SAS*, No. 1:16-cv-00378-KD-C, slip op. at 3 (S.D. Ala. Mar. 19, 2019) (noting that "the Court has inherent authority to remand once the international arbitration defense has been eliminated."); *Wexler v. Solemates Marine, Ltd.*, 2017 WL 979212, at *5 (S.D. Fla. Mar. 14, 2017) (remanding the plaintiff's claims against a defendant, including Jones Act claims, after finding that the defendant was "unable to satisfy the first jurisdictional element of *Bautista*").

### IV. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDED** as follows:

1. Defendants' motion to dismiss (DE 3) is **DENIED**. Plaintiff's motion to remand (DE 8) is **GRANTED IN PART**.

2. This case is **REMANDED** to the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

3. The Clerk of Court is directed to forward a certified copy of this Order to the Clerk of the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

4. The Clerk is directed to **CLOSE** this case. Any and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 27th day of March, 2020.

```
_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE
```